POSTAL TELEGRAPH-CABLE COMPANY *v.* W. C. CRAIG & Co.

[63 South. 573.]

1. SET-OFF AND COUNTERCLAIM. *Recoupment. Appeal and error. Harmless error. Telegraphs and telephones. Messages. Agency of Messenger.*
   In a suit by a telegraph company on an open account for tolls due for transmitting messages, a claim by defendant ·for damages from delay in delivering one of such messages can be set up by defendant by way of recoupment, and a judgment allowing such claim will not be set aside on the ground that it was erroneously allowed as a set-off under the statute, no judgment over against the plaintiff having been entered.

2. TELEGRAPHS AND TELEPHONES. *Messages. Receipt by ·the company. Agency of messenger.*
   Whereupon the back of the blank used by the sender under the head of "terms and conditions" was printed, "No responsibility regarding messages attaches to this company until same are presented and accepted at one of its transmitting offices, and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender," this merely means that the messenger is made the agent of the sender to get the message to the company, but where the message was in fact delivered to the company's office, it was charged with notice given the messenger by the sender of the importance of the message.

APPEAL from the circuit court of Warren county.
HON. H. C. MOUNGER, Judge.
Suit by the Postal Telegraph & Cable Company against W. C. Craig & Company. From a judgment for plaintiff after allowing defendant's claim, plaintiff appeals.
The facts are fully stated in the opinion of the court.

*J. C. Bryson,* for appellant.

It may be well to call the court's attention to the stipulation on the back of the message as follows: "No responsibility regarding messages attaches to the company

until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of this company's messengers, he acts for that purpose as the agent of the sender.''

Whether this be treated as a part of the contract or as a mere rule of the company it is valid and binding on the sender of the message. We have found no case holding such stipulation unreasonable, but on the contrary all the cases in point, which we have been able to review, sustain the stipulation.

''A regulation printed on the back of a message blank to the effect that the company will not be responsible until the messages are presented and accepted at one of its transmitting offices, and that if a message is sent to such office by one of the company's messengers, he shall be deemed to act as the sender's agent for that purpose, and not as the agent of the company, has been held reasonable and binding both on the sender and addressee.'' 2 Thompson on Negligence (2 Ed.), 962, par. 2416.

A delivery of a message to one of the company's messenger boys, written on one of its blanks is not a delivery to the company unless it has been accepted by the latter at one of the transmitting offices. It is very often the case, that a message is written out on one of the company's blanks, and given to one of the messenger boys by the sender with the request that he deliver it to the company for transmission; notwithstanding the fact that this may be the usual way the sender has of delivering messages for transmission, yet, a delivery to the company in such manner would not be a proper delivery to it. The reason assigned for the soundness of this rule, is, that on nearly, if not all, of these blanks there is a stipulation to the effect, that when messages are delivered to the messenger boy, he shall be considered the agent of the sender and not that of the company in that particular business, and when the sender signs the message he should be bound by the stipulations. It is a reasonable

regulation; since, in some cases, the operator of the company may have reasons for not accepting a message for transmission and of which the messenger would have no knowledge. It is well known that the messengers are usually young and inexperienced boys, and of course are not familiar with the rules in regard to the proper messages to be accepted for transmission. It follows, therefore, that if a delivery to a messenger should be considered a delivery to the company, the latter would be liable for failure to send a message delivered to its messenger, although to do so would subject the company to an indictment or to an actionable wrong. If, however, the message had been delivered to one of the transmitting offices of the company, and it is a proper message for transmission, it is then a delivery to the company." See, also, in point *Ayers* v. *Western Union Telegraph Company,* 65 N. Y. App. Div. 149.

If the messenger boy be treated as the agent of Craig & Company there is no evidence of notice to the telegraph company of the nature and urgency of the message. The burden of proof rested on Craig & Company to show that such notice was given to the company. They undertook to meet this burden by showing notice to their own agent (the messenger boy) but were unable to show further that he communicated the notice to any employee of the company authorized to receive the same. Under these circumstances we submit that the case stands as if no effort had been made to give notice of the importance of the message.

Craig & Company's claim not pleadable as a set-off. The predicate for damages laid in Craig & Company's plea is "because of said negligent delay in delivery, cost this defendant in cash the actual sum herein claimed and demanded by way of set-off." Negligence is not the gravaman of an action *ex contractu* but it is of an action *ex delicto.* In contract the essence of the action is the breach of some express or implied stipulation in the con-

tract itself and it makes no difference whether such breach resulted from negligence or not while in tort the essence of the action is the negligent failure to perform some legal duty and the duty cannot arise from any contract but must be a duty which the law itself imposes. While it is true that the contract may embody the same obligation which the law imposes as a duty, it does not break down the distinction between actions *ex delicto* and actions *ex contractu.* In cases where the obligation which the law imposes as a duty is also made a stipulation of the contract, it merely gives the injured party a choice of actions, *ex delicto* or *ex contractu,* but he cannot use both; when he chooses one he waives the other.

The distinction is important here because under our statute a right of action *ex delicto* can never be interposed as a set-off. Par. 745 of the Miss. Annotated Code of 1906 provides as follows: "Where a mutual indebtedness exists between the plaintiff and the defendant, the defendant may plead and set-off against the demand of the plaintiff and debt or demand which he may have against the plaintiff. . . ."

It will be noticed that the language here employed, first the term "indebtedness." This applies both to the primary action and to the cross action. The subject-matter of both must fall within the meaning of the term "indebtedness." As to the principal action it is described as the "demand of the plaintiff" and as to the cross action it is described as the "debt or demand" of the defendant.

The very terms of the statute necessarily cut out all claims sounding in tort because a demand in tort is not a debt. We think it also excludes any unliquidated demand in contract where there is no basis of computation growing out of the contract or transaction itself whereby the demand can by mere computation be reduced to a certainty. The decisions of this court, we think, confirm our view. One of the first, if not the very

first case, bearing on the statute is that of *Whitaker* v. *Robinson,* 8 S. & M. 349.  We quote from the syllabus as follows: "It is impossible at law, to set-off unliquidated damages against a fixed money demand; therefore, to an action on a note, for a fixed sum, an offset cannot be made of the value of a slave of the defendant, alleged to have been converted by the payee of the note to his use." *Casper* v. *Thigpen,* 48 Miss. 635; *Burrus* v. *Gordon,* 57 Miss. 93; *Cobb* v. *Wilson et al.,* 60 Miss. 343; *Wilkerson* v. *Searles,* 70 Miss. 392, and *Miller* v. *American National Bank,* 76 Miss. 84.

*McLaurin, Armistead & Brien,* for appellee.

It will be seen that the message reached the telegraph office and was sent, having been brought to the telegraph office by a messenger in the service of the telegraph company for the purpose, who went after the message and brought it back very promptly.  Mr. Hackett's testimony shows that the message was sent at ten thirty-five.  Mr. Drake's testimony shows, as already quoted, that it was sent at ten thirty-five; so the messenger boy must have been very alert and diligent in the performance of the duty imposed upon him by the company.

It is fair to presume that the Wilson boy did his full duty and that he not only delivered the telegram at the office where it was accepted, but that he delivered Mr. Drake's message to the effect that it was an order and must be rushed.  We say this is a fair presumption because we think it is right to presume that duties imposed upon employees are discharged; and second, that if it were not the case, it being insisted here that Wilson was not the agent of the company in the reception of the message, that either Wilson would have been put upon the stand to show that he did not receive the instruction from Mr. Drake as stated by Drake and did not tell them, or the counter clerk would certainly have been put upon the stand to show that no such information was imparted to him by Wilson.

It is true that there is a clause on the back of the telegram providing that no responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices and that the company's messengers are the agent of the sender. We do not believe, although some authorities from other states may be cited to show that the messenger boy is the agent of the sender, that under the conditions existing in this case this court would ever so hold. It seems to us that it would be a remarkable proposition to hold that where a telegraph company, in order to successfully compete with other common carriers in the same line of business, constructs and maintains, at its own expense, a call bell in the office of various business concerns to be especially used for the purpose of calling a messenger, that it could be said that this messenger was not the agent of the company in receiving a message and also any express instructions that might be given at the time, as was the case here. So the message having been delivered to an agent with specific instructions as to its importance, and having, as we contend, been delivered by the agent to the proper party to receive it in the office of the company, it was no defense, for a failure to promptly transmit and deliver said message, to set up the fact that there was an unusual rush of business over its wires, as is done in replication number 3, page 28 of the record. If, as contended by appellant, the messenger boy was the agent of the sender of the telegram, and as it appears abundantly from the record that there was a congestion in the business out of Birmingham not only at the time of the reception of the message in Birmingham but at the time it was received in Vicksburg, then it seems to us that common sense would dictate that Birmingham ought to have notified the Vicksburg office (if the message ever went to Birmingham, and this, we think, is not shown in the record) that it could not promptly handle the message and the messenger boy should in turn have been no-

tified by the Vicksburg office that the message could not be properly handled or W. C. Craig & Company should have been notified directly. The true rule in reference to the duty of a common carrier under these circumstances is announced in the case of *Y. & M. V. R. R. Co.* v. *Blum,* 88 Miss. 180, particularly, the language of the court in the opinion on page 190 where, among other things, it is specifically stated, in reference to a common carrier who has accepted freight for transportation:

''Thereby it assumed, by operation of law, the obligation to promptly transport and deliver, and from this legal obligation nothing can relieve the carrier, except 'the act of God, the public enemy, the act or conduct of the owner, or a special agreement limiting its duty.' None of these relieving causes intervened.''

Again on page 191 discussing this very proposition, the court said: ''The carrier was aware, at the time of the tender of the freight, of the probability of delay in handling the shipment, but notwithstanding this it accepted the cotton, issued its bills of lading and thereby assumed its legal liability for damages for failure or delay in transportation and delivery. It did not advise the shipper of the probability of delay and thus afford him another opportunity of selecting some other method, if one might be had, of transporting his freight or of disposing of it at the place of shipment.''

The same reasons obtain in reference to the demurrer to the fourth and fifth replications, and in this connection see also the Blum case reported again in 89 Miss. 242; also *Railroad Co.* v. *McKay,* 91 Miss. 138; also the *Ragsdale case,* 46 Miss 458.

Appellant contends that W. C. Craig & Company would not have the right to recover under any view of the case. This broad proposition of course, covers the whole case and before discussing its merits, it may be proper to cite the court to the authorities relied on for filing this set-off. There is abundant authority for this procedure.

We cite the court to section 754 of the Code of 1906 and to the cases of *Wilkinson* v. *Searles,* 70 Miss. 392, and *Miller* v. *American National Bank,* 76 Miss. 84; *Shingleur* v. *Western Union Telegraph Co.,* 72 Miss. 1030; *Postal Tel. Co.* v. *Rhett,* 33 So. 412, and reported again in 35 So. 829.

COOK, J., delivered the opinion of the court.

W. C. Craig & Company were engaged in the cotton business at Vicksburg, Mississippi, with correspondents in New York City. The telegraph company had an office in Vicksburg and one in New York, and was engaged in the business of transmitting messages for hire from Vicksburg to New York, and throughout the entire country. Craig & Company ran an open account with the telegraph company. The course of business between the parties to this suit, in this regard, as shown by the record, was that Craig & Company would send a message to be transmitted, and the telegraph company would receive and transmit the same and then charge Craig & Company with the regular toll for each message sent, or received collect by Craig & Company. On March 22, 1911, the telegraph company filed its declaration against Craig & Company based on an itemized open account for the months of September, October, November, and December, 1910, and January and February, 1911, aggregating seven hundred and twenty-eight dollars and forty-five cents. After the declaration there was much pleading, demurring, and making of motions, which we deem it unnecessary to consider. Suffice it to say that the cause went to trial upon the declaration, the general issue, and notice and a special plea of defendant, which notice and plea, reduced to reasonable dimensions, amounts to about this: The plaintiff herein will take notice: That on the trial of this case the defendants will offer evidence and undertake to prove as an affirmative defense the following facts. That the defendants are cotton buyers in Vicks-

burg, Mississippi, and were so engaged during the month of October, 1910, and on the 3d day of October, 1910, they sent a telegram direct, and without the direct or indirect assistance of any agent, attorney or intermediary in this state in said transaction, to Craig & Jenks, cotton buyers and brokers in the city of New York, which was an order to buy five hundred bales of cotton, December delivery. The message was delivered to a messenger boy of plaintiff's at ten thirty-five a. m. with specific instructions as to its import and importance, and with the request to hurry the message in transmission. The message was not delivered in New York until twelve m., which was an unusual and unnecessary delay and resulted in a direct loss to these defendants of four hundred and ninety dollars by reason of the advance in the market in the meantime. Repeated offers to pay the difference to plaintiff between this sum and the sum herein sued for have been made, and the plaintiff has refused to accept the same; and the defendant now renews the offer to pay said difference, which amounts to two hundred and thirty-eight dollars and forty-five cents, and herewith tenders same and pays it over to the clerk of this court with authority to the clerk to pay the same to plaintiff whenever it will dismiss this case and receipt them in full. The said four hundred and ninety dollars demanded of plaintiff is for damages for breach of contract as above set out, and is by way of a set-off sued for herein, and an itemized statement of same is herewith filed, marked "Exhibit A," and made a part of this notice. A jury was waived, and the cause was submitted to the court on the law and the facts, and the court entered judgment allowing plaintiff balance due, after deducting the set-off filed by defendant. There was no conflict in the evidence, as to the measure of defendant's damage—the only conflict being over the failure of plaintiff to transmit the message within a reasonable time— and the court solved this conflict in favor of defendant. When the court

reached the conclusion that the telegraph company breached its contract to transmit the message within a reasonable time, it necessarily followed that the offset should have been allowed, if it was pleadable under the statute.

Appellant insists that under our system the matter pleaded was in effect a cross action founded upon a tort, the negligence of the telegraph company to perform its duty as common carrier; while the demand of plaintiff is *ex contractu,* an action upon an open account for tolls due it for transmitting messages.

It will be observed that the damages arise out of the alleged breach of contract, and this, taken together with the course of dealing between the parties, shows that the toll for this message was, or could, under the course of business, have been, charged upon the open account sued on by plaintiff. The telegraph company was engaged in the sole business of transmitting messages for hire, and in the course of its business it entered into an arrangement with Craig & Company whereby it sent messages without first demanding the payment of its tolls; and the charge for sending this message was, or should have been, entered upon the account sued on.

In other words, the counterclaim grows out of the very business and dealings which forms the basis for plaintiff's cause of action. Was this within the terms of our statute, which Judge CAMPBELL indicates, in *Wilkinson* v. *Searles,* 70 Miss. 392, 13 So. 470, enlarges the right of set-off? It matters but little by what name the defensive matter may be dubbed—and it seems clear to us that a demand growing out of mutual dealings, as was the case here, could, at least, be used in recoupment.

This being true, we do not feel authorized to disturb the judgment of the court upon the "technical form of appellee's plea." In a case strikingly like this case, the court said: "The defense relied on by the appellee could have been properly interposed by way of recoupment,

and, as no judgment over was taken against the appellant, no harm was done." *Machine Co.* v. *Thomas,* 87 Miss. 391, 39 So. 810. No judgment ever was asked or obtained, in the present case, and "no harm was done," on account of the form of the pleading.

It is claimed that the message sent in this case was in cipher and appellant was not advised of the importance of promptly transmitting same. Craig & Company say they delivered it to a messenger of appellant and told him that it was an order and important.

Appellant claims that the messenger was the agent of Craig & Company, and not their agent, and notice to the messenger of the importance of the message was not notice to the telegraph company. In support of this contention, appellant relies upon the printed "terms and conditions" upon the back of the blank used by Craig & Company. The clause relied on reads: "No responsibility regarding messages attaches to this company until same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender."

This regulation, or condition, analyzed, means that the company will not be responsible for messages delivered to one of its messengers, until the messenger delivers it to its office; and it notifies senders that, if they choose to send the message by their messenger, they take the risk of his failure to deliver same. The messenger is made the agent of sender to get the message to the company. This condition was written by the company and cannot be given a meaning broader than its language imports. There was no failure to deliver; the message was delivered and accepted at the office of the company. The messenger was the agent of the company, except as provided by the printed condition. Conceding that the printed matter binds persons using the blanks, we can find nothing in the condition, relied on by appellant, to support its contention.

We have gone over all the testimony in the record, and we cannot say that the circuit judge was wrong in his conclusions. The record contains abundant evidence which authorized the judge to reject the reasons urged by appellant as an excuse for its failure to promptly transmit and deliver the message.

*Affirmed.*